## SPRING LAKE IRON COMPANY v. THOMAS J. WATERS.

*Bona fide purchaser—Fraud against creditors.*

A sale to a *bona fide* purchaser is not invalidated by the fact that the vendor made it with intent to hinder and defraud creditors.

Error to Muskegon.   (Russell, J.)   Jan. 5.—Jan. 17.

REPLEVIN.   Plaintiff brings error.   Reversed.

*Smith, Nims, Hoyt & Erwin* for appellant.   The validity of a sale is not destroyed by the mere fact that the vendor cannot pay his debts: *People v. Bristol* 35 Mich. 28 ; *Andrews v. Fillmore* 46 Mich. 315.

*A. H. Standish* and *W. D. Fuller* for appellee.

GRAVES, C. J.   The defendant was sheriff of Muskegon county, and having received for service an execution and also an attachment in favor of the "Lima Machine Works" and against Seneca G. Lapham and Rufus K. Smythe, constituting the firm of Lapham, Smythe & Co., he levied the same on sixteen railroad flat cars, narrow-guage, and the Spring Lake Iron Company replevied them.   The jury found for the defendant, and assessed his damages at $240. The record is much longer than it should have been and the explanation is not perfectly apparent.   The nature of the case may be indicated by referring to the surrounding facts.

July, 1879, Lapham, Smythe & Co., the judgment and attachment debtors, agreed with the plaintiff corporation to furnish it a large quantity of wood, and in order to facilitate performance they proceeded to make a railroad from the plaintiff's furnace into the forest.   With the view of equipping the road they purchased from the "Lima Machine Works" a quantity of car-wheels on credit.   Subsequently it was deemed expedient to cover the enterprise

of making and running this railroad with a corporate character, and accordingly the "Ravenna & Spring Lake Narrow-gauge Railroad Company" was organized.

January 13, 1880, Lapham, Smythe & Co. executed a bill of sale to this corporation for the engine and cars belonging to the road before the incorporation, and for certain other property. The articles purchased of the "Lima Machine Works" were included. On the same day, the railroad company executed to the plaintiff corporation a lease of the road for five years, together with its equipments and including the property in controversy.

April 17, 1880, Lapham, Smythe & Co. executed a bill of sale to the plaintiff corporation of all their right and interest in the cars in question. The judgment on which the execution issued was obtained April 26, 1880, and the levy was made the same day. The attachment was levied on the 16th of May. The action was resisted on the ground that the transfers of the property directly and indirectly to the plaintiff corporation were made with intent to hinder, delay and defraud the creditors, including the "Lima Machine Works" of Lapham, Smythe & Co.

The errors assigned are on the direction to the jury, and it must be admitted that the charge as printed in the record is ambiguous and misleading. It is not worth while to discuss it. Several of the allegations of error, however, do not seem to be well based. But one or two are well grounded beyond doubt.

The plaintiff corporation claimed as a purchaser in good faith and for value, and contended that the title so acquired could not be affected by any intent of its grantors to defraud creditors, and there was evidence for the jury on this theory. But the circuit judge, although in some parts of the charge he seemed to recognize and approve the view that the plaintiff's right as lessee would be good if the lease was taken in good faith, yet laid it down in another place, without qualification, that if the jury should find that the sale was made with the intention of hindering and delaying the creditors, then existing, of Lapham, Smythe & Co., then the sale

would be void as to the creditors so hindered or delayed. By this the plaintiff's right was made to depend entirely on whether those from whom it received title acted in good faith, and the question of good faith on its own part was treated as immaterial, and an examination of the charge in all its parts confirms the opinion that the jury were influenced by this direction. The ruling was of course wrong. It is not necessary and would not be profitable to dwell upon the case in the shape in which it comes.

The judgment must be reversed with costs and a new trial granted.

The other Justices concurred.